993 F.2d 11
 25 Fed.R.Serv.3d 828
 Betty LUNDQUIST, on behalf of herself & all others similarly
situated, Plaintiff-Appellant-Cross-Appellee,
v.
SECURITY PACIFIC AUTOMOTIVE FINANCIAL SERVICES CORP.,
Defendant-Appellee-Cross-Appellant.
 Nos. 1323, 1767, Dockets 92-9288, 92-9362.
 United States Court of Appeals,
Second Circuit.
 Argued April 5, 1993.
Decided May 6, 1993.
 
 Joanne S. Faulkner, New Haven, CT (Daniel A. Edelman, Cathleen Combs, James Eric Vander Arend, Law Offices of Daniel A. Edelman, Chicago, IL, of counsel), for plaintiff-appellant-cross-appellee.
 Charles T. Lee, Stamford, CT (Alejandro Diaz, Paul, Hastings, Janofsky & Walker, of counsel), for defendant-appellee-cross-appellant.
 Before TIMBERS, McLAUGHLIN, and HARRY W. WELLFORD,* Circuit Judges.
 PER CURIAM:
 
 
 1
 Betty Lundquist ("Lundquist") appeals from a judgment of the United States Court for the District of Connecticut (T.F. Gilroy Daly, Judge ) denying her motion for class certification in an action against Security Pacific Automotive Financial Services Corp. ("Security Pacific"). She sued Security Pacific alleging that a form automobile lease agreement which she signed violated the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667e (1988) ("CLA"), and implementing regulations, 12 C.F.R. §§ 213.1-213.8 (1992) ("Regulation M"), as well as applicable state law. Security Pacific cross-appeals from the same judgment granting Lundquist's motion for partial summary judgment, in which the district court found that Security Pacific's disclosures in its form lease violated the CLA. For the reasons set forth below, we affirm.
 
 
 2
 In June 1988 Lundquist leased a Peugeot from Security Pacific, for a term of five years. She received a disclosure document stating that she had "no right to terminate this lease prior to the scheduled end of its term." If Lundquist chose to violate the lease by returning the car and making no more payments, she would be in default and liable according to the following provision:
 
 16. EARLY TERMINATION LIABILITY
 
 3
 At any time after I [the lessee] sign this lease, you [Security Pacific] may terminate it if any of the conditions described in Item 22 occur or this lease is in default as described in Item 23.
 
 
 4
 I agree that my payment liability upon early termination will be the sum of:
 
 
 5
 (a) A termination fee of $250; plus
 
 
 6
 (b) Any monthly lease payments already due you which are unpaid and any other amounts arising from my failure to keep my promises under this lease; plus
 
 
 7
 (c) The amount, if any, by which the sum of the Adjusted Lease Balance as described in Item 8, plus one Base Payment, Item 3.A., exceeds the Realized Value, as determined in accordance with Item 15; plus
 
 
 8
 (d) Any official fees and taxes imposed in connection with lease termination (for example, sales/use taxes due on a deficiency balance under (c)).
 
 Item 8, referred to in Item 16, states:
 8. ALLOCATION OF MONTHLY LEASE PAYMENTS
 
 9
 Portions of each monthly lease payment are for depreciation, lease charge and sales/use tax. While the total amount of each monthly lease payment will be the same (assuming that current sales/use tax rates, if applicable, do not change), the depreciation and lease charge portions will differ with each payment. During the lease term you will earn a total of lease charges equal to the product of the number of monthly lease payments, due under the lease times $102.24, the average monthly lease charge. The lease charges will be earned by you on a constant yield basis in relation to the Adjusted Lease Balance as it declines during the lease term. The lease charge portion for any monthly lease payment is figured by multiplying the rate which provides a constant yield throughout the lease term times the Adjusted Lease Balance. Again, the portion of the monthly payment not allocated to lease charges or sales/use tax will be allocated to depreciation. (These calculations will follow the rule for journal entries for lessors as to direct financing leases obtained in Statement of Financial Accounting Standards No. 13.)
 
 
 10
 At any given time the Adjusted Lease Balance is:
 
 
 11
 (a) $18,780.00 less (b) the sum of (1) all depreciation amounts received by you to date plus (2) one Base Payment, Item 3.A.
 
 Item 15 provides as follows:
 15. VEHICLE VALUATION AT EARLY TERMINATION
 
 12
 My termination liability in the event of early termination will be affected by the Realized Value of the vehicle. The Realized Value may be determined in one of the following ways:
 
 
 13
 (a) Within ten (10) days after I return the vehicle, you and I may enter into a written agreement as to the vehicle's value, should I request it, or I may obtain a professional appraisal of the wholesale value of the vehicle made by a qualified person I find, who is acceptable to you as well as to me. I agree that the expense of any such appraisal will be mine.
 
 
 14
 (b) If the Realized Value is not determined as above within ten (10) days after return of the vehicle, you will attempt to obtain three bids to purchase the vehicle at wholesale for cash or may establish the Realized Value in some other commercially reasonable manner. I will have the right to submit a written bid which you agree to consider together with all other bids you may receive. Even though you may decide not to sell the vehicle to any bidder, the highest bona fide bid received (which is supported by whatever proof of ability to pay you may require) will be considered the vehicle's Realized Value.
 
 
 15
 I understand and agree that the Realized Value amount will be exclusive of any official fees and taxes imposed upon the disposition of the vehicle.
 
 
 16
 Some time after leasing the Peugeot, Lundquist called Security Pacific to inquire about terminating the lease. She was told it would require a substantial payment. She then sued Security Pacific, alleging that the form automobile lease agreement (1) failed to comply with the disclosure and reasonableness requirements of the CLA and Regulation M; (2) imposed unreasonable termination penalties, in violation of the substantive requirements of the CLA; and (3) violated state common law and "unfair and deceptive acts and practices" statutes.
 
 
 17
 Along with her complaint, Lundquist moved for class certification. She sought to represent a class that she defined as "all persons who signed leases with Security Pacific Automotive Financial Services Corporation using forms similar to [her own] ... which leases do not have the three boxes at the end labelled 'corporation,' 'partnership' and 'sole proprietor' checked."
 
 
 18
 In June 1992 Magistrate Judge Smith (1) denied most of Security Pacific's motion to dismiss Lundquist's complaint, as relevant here, and (2) declined to the certify the class. In denying the motion for class certification, the Magistrate held that Lundquist failed to satisfy the commonality and typically requirements of Fed.R.Civ.P. 23(a) (rev. ed. 1991) and the need requirement of Rule 23(b). He also noted that class certification in this case would needlessly strain the District of Connecticut's already limited judicial resources. Judge Daly adopted the recommendation on class certification, over Lundquist's objection.
 
 
 19
 In August 1992 Magistrate Judge Smith granted Lundquist's motion for partial summary judgment, holding that the "Early Termination Liability" provisions of Security Pacific's form lease were neither "reasonably understandable" nor "clear" to the average consumer and thus violated the disclosure requirements of the CLA. Judge Daly adopted the Magistrate's opinion, over Security Pacific's objection, and entered judgment in favor of Lundquist for $1,000 (plus attorney fees and costs), the maximum amount of statutory damages she was entitled to recover under 15 U.S.C. § 1640(a)(2)(A)(ii) (1988).
 
 
 20
 Lundquist now appeals, contending that the district court's reasons for denying class certification lack a valid legal or factual basis. On cross-appeal, Security Pacific argues that the disclosure complies with the requirements of the CLA. We reject both of these arguments.
 
 I. The Appeal
 
 21
 "Provided that the district court has applied the proper legal standards in deciding whether to certify a class, its decision may only be overturned if it constitutes an abuse of discretion." Johnpoll v. Thornburgh, 898 F.2d 849, 852 (2d Cir.) (per curiam) (citing Adamson v. Bowen, 855 F.2d 668, 675 (10th Cir.1988)), cert. denied, 498 U.S. 819, 111 S.Ct. 63, 112 L.Ed.2d 38 (1990). Although we are noticeably less deferential to the district court when that court has denied class status than when it has certified a class, see Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir.1993) (citing Abrams v. Interco, Inc., 719 F.2d 23, 28 (2d Cir.1983)), we conclude that the district court did not abuse its discretion in finding that Lundquist defined the class too broadly to meet the (a)(2) commonality and the (a)(3) typicality requirements. See McCarthy v. PNC Credit Corp., Civil No. H-91-854, slip. op. at 4 (D.Conn. May 27, 1992) ("Plaintiff offers no indication that members of the class defaulted under similar circumstances; whether they incurred excess mileage charges; or were in some other way harmed by the alleged illegality of the lease form in question.").
 
 
 22
 We are aware that the district court "is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly," Robidoux, 987 F.2d at 937 (citing 7B Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1790, at 270-71 (1986)). And we also recognize that the court is empowered under Rule 23(c)(4) to carve out an appropriate class--including the construction of subclasses. See Wright, Miller & Kane, supra, at 269-71. The court, however, is not obligated to implement Rule 23(c)(4) on its own initiative. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 408, 100 S.Ct. 1202, 1215, 63 L.Ed.2d 479 (1980) (it is plaintiff's burden to show how the action may be subclassed to avoid certification problems and "[t]he court has no sua sponte obligation so to act"). Thus, the district court's refusal to shoulder what, in the final analysis, is plaintiff's burden cannot be regarded in this case as an abuse of discretion.
 
 II. The Cross-Appeal
 
 23
 Under the CLA and Regulation M, disclosures on a consumer lease must be made "accurately and in a clear and conspicuous manner," 15 U.S.C. § 1667a, "in meaningful sequence," 12 C.F.R. § 213.4(a)(1), and in "a reasonably understandable form," 12 C.F.R. pt. 213, supp. I, § 213.4(a)(1) (official staff commentary). We have made a de novo review, see Gnazzo v. G.D. Searle & Co., 973 F.2d 136, 138 (2d Cir.1992), and we agree with the district court that the Security Pacific lease disclosures are not reasonably understandable. They are "confusing, unduly complicated, and unnecessarily convoluted." In particular, the termination formula in Item 16(c) of the lease is a Byzantine formula, beyond the understanding of the average consumer. Thus, partial summary judgment for Lundquist was appropriate.
 
 
 24
 We have considered all other arguments on appeal and on cross-appeal, and have found them to be without merit. The judgment of the district court is affirmed.
 
 
 25
 HARRY W. WELLFORD, Senior Circuit Judge, concurring:
 
 
 26
 The majority does not require the district court to narrow the class requested by the plaintiff, holding that it is plaintiff's burden to define an appropriate class.
 
 
 27
 In United States Parole Comm'n v. Geraghty, 445 U.S. 388, 407-08, 100 S.Ct. 1202, 1214-15, 63 L.Ed.2d 479 (1980), the Supreme Court refused to impose a duty upon the district court to construct subclasses under Rule 23(c)(4), holding that burden is on the plaintiff to submit proposals to the court. "The court has no sua sponte obligation to act." Id.
 
 
 28
 Wright, Miller & Kane, 7b Federal Practice and Procedure: Civil 2d § 1790, however, explained that the court may act sua sponte to create subclasses:
 
 
 29
 In addition to the court's powers under Rule 23(c)(4), plaintiff, when he initiates the litigation, may identify issues that should be given class treatment.... Of course, the court is not bound by plaintiff's complaint and should not dismiss the action simply because it misdefines the class or the issues when the court can correct the situation under Rule 23(c)(4).
 
 
 30
 Id. The burden is on the plaintiff to show that class requirements are met and "thus how the action may be subclassed to avoid certification problems." Id. at 271.
 
 
 31
 In the case at hand, the magistrate judge refused to narrow the class for the plaintiff/representative despite reviewing cases which defined similar, but more narrow, classes. In my view, the district court should have given the plaintiff an opportunity to narrow her class if that were the only problem with the certification of that class.
 
 
 32
 Several notices of class action and cases existed with more narrow but similar classes defined which might have guided the magistrate judge. See Kedziora v. Citicorp Nat'l Serv., Inc., No. 91-C-3428 (N.D.Ill. Dec. 31, 1992); Simon v. World Omni Leasing, Inc., 146 F.R.D. 197 (S.D.Ala.1992); Wesley v. General Motors Acceptance Corp., 1992 WL 112244 (N.D.Ill. May 20, 1992); Calkins v. Blum, 511 F.Supp. 1073 (N.D.N.Y.1981), aff'd, 675 F.2d 44 (2d Cir.1982); Perry v. Beneficial Fin. Co., 81 F.R.D. 490 (W.D.N.Y.1979).
 
 
 33
 Simon v. World Omni Leasing, Inc., 146 F.R.D. 197 (S.D.Ala.1992), dealing with a similar Truth in Lending situation, certified a class of anyone "who signed contracts with [the defendant] using forms with disclosure statements identical to that in Exhibit A to the complaint and who leased those vehicles for personal use" and who are not precluded by the one year statute of limitations.
 
 
 34
 Wesley v. General Motors Acceptance Corp., 1992 WL 112244 (N.D.Ill. May 20, 1992), also a similar case, certified the following class:
 
 
 35
 All natural persons who (a) leased a car from GMAC primarily for personal, family, or household purposes; (b) signed a lease agreement using form numbers 671-DLP and 671-DLP-A, for a duration exceeding four months, and for a total lease obligation not exceeding $25,000; (c) signed their lease agreements in Illinois; (d) terminated ... their leases on or after April 26, 1990 but before the scheduled termination of their leases; (e) were assessed an early termination or default deficiency based on a formula using the sum of the monthly balances for calculation of unearned lease charges.
 
 
 36
 Kedziora v. Citicorp Nat'l Serv., Inc., No. 91-C-3428 (N.D.Ill. Dec. 31, 1992), approved the following notice of class action to all persons who:
 
 
 37
 (a) entered into a car lease (1) covering a lease period of more than four months and (2) providing for obligations on the part of the lessees (the persons leasing the cars) of not more than $25,000 per car and (3) having early termination provisions that were the same as those in the lease that is attached to the complaint in this case as Exhibit A; (c) terminated their leases ... before the leases were originally scheduled to terminate, but in any event after May 6, 1990, and then returned their cars or else the insurance proceeds ... to CNS; and (d) were assessed by CNS for a deficiency based on early termination of, or defaults on, their leases.
 
 
 38
 Perry v. Beneficial Fin. Co., 81 F.R.D. 490 (W.D.N.Y.1979), certified a class of persons to whom defendant made loans during a specified period. The court, however, limited the class to those who obtained loans within the one year statute of limitations of the Truth in Lending Act. See also Calkins v. Blum, 511 F.Supp. 1073 (N.D.N.Y.1981), aff'd, 675 F.2d 44 (2d Cir.1982) (a narrow subclass defined by the court in a non-Truth in Lending Act case).
 
 
 39
 The district court or the magistrate judge might well have narrowed the requested class or defined an acceptable subclass. The fact that this was not done sua sponte does not constitute an abuse of discretion. I, therefore, concur despite some reservations.
 
 
 
 *
 Honorable Harry W. Wellford, United States Court of Appeals for the Sixth Circuit, sitting by designation