**Jean E. CLEMENT**

v.

**AMERICAN HONDA FINANCE CORP.**

No. Civ.A. 3:95CV660(SRU).

United States District Court, D. Connecticut.

March 30, 2001.

Joanne S. Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, Daniel A. Edelman, Michelle A. Weinberg, Cathleen M. Combs, Edelman, Combs & Latturner, Chicago, IL, for Plaintiff.

Mark B. Seiger, Janet Marie Helmke, Edwards & Angell, Hartford, CT, for Defendant.

### RULING ON PLAINTIFF'S AND DEFENDANT'S CROSS–MOTIONS FOR SUMMARY JUDGMENT

UNDERHILL, District Judge.

Jean Clement sued American Honda Finance Corp. ("AHFC") for failure of an AHFC automobile lease to comply with several disclosure requirements of the Truth–In–Lending Act, as amended by the Consumer Leasing Act. *See* 15 U.S.C. §§ 1640 and 1667d. Clement moved for summary judgment (doc. # 84) and AHFC cross-moved for summary judgment (doc. # 88). Because the AHFC lease failed to disclose the early termination penalties in a "clear and conspicuous manner" and failed to disclose adequately the available express warranties, summary judgment is granted in favor of Clement.

## I. Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a summary judgment motion, the court must construe the facts in a light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Turner v. General Motors Acceptance Corp.,* 180 F.3d 451, 453–54 (2d Cir. 1999).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, Rule 56(e) requires that the nonmoving party do more than reference its own pleadings. *Id.* at 325, 106 S.Ct. 2548. When a motion for summary judgment is properly supported by documentary and testimonial evidence, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but rather must present sufficient probative evidence to establish a genuine issue of material fact. *Id.* at 327, 106 S.Ct. 2548 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). To present a genuine issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

■ Ordinarily, whether disclosures under the Truth–In–Lending Act ("TILA") are inaccurate, misleading, or confusing is a question of fact for the factfinder. *Griggs v. Provident Consumer Discount Co.,* 503 F.Supp. 246, 250 (E.D.Pa.1980) (citing *Barber v. Kimbrell's, Inc.,* 577 F.2d 216 (4th Cir.1978)). Where, however, "the confusing, misleading, and inaccurate character of the disputed disclosure is so clear that it cannot reasonably be disputed, summary judgment for the plaintiff is appropriate." *Id.; see also Lundquist v. Security Pacific Automotive Financial Services Corp.,* 993 F.2d 11 (2d Cir.1993) (summary judgment granted for automobile lessee because termination provisions of lease violated disclosure requirements of CLA); *Applebaum v. Nissan Motor Acceptance Corp.,* 226 F.3d 214 (3rd Cir.2000) (same).

## II. Consumer Leasing Act ("CLA")

■ Congress enacted the CLA as an amendment to the TILA and extended the TILA's "credit disclosure requirements to consumer leases." *Turner,* 180 F.3d at 454. The CLA, like the rest of the TILA, "is a disclosure rather than regulatory statute." *Id.*

Its primary purpose is to "assure a meaningful disclosure of the terms of leases ... so as to enable the lessee to compare more readily the various lease terms available to him." 15 U.S.C. § 1601(b). Because lease financing had become recognized as an alternative to credit financing and installment sales contracts, Congress also intended CLA disclosure requirements to "enable comparison of lease terms with credit terms where appropriate." *Id.* The CLA thus requires lessors of personal property subject to its provisions to make specified disclosures when a lease is entered into. *See* 15 U.S.C. § 1667a (consumer lease disclosures).

*Id.*

█ "The TILA [1] and the regulations promulgated under it require a creditor to disclose relevant credit information to a consumer in comprehensible language and form. The required disclosures are intended to provide, especially to the inexperienced and uninformed consumer, a way to avoid 'the possibility of deception, misinformation, or at least an obliviousness to the true costs' of a credit transaction." *Griggs*, 503 F.Supp. at 249 (quoting *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3rd Cir.1980) and citing *Allen v. Beneficial Finance Co.*, 531 F.2d 797 (7th Cir.), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976)). *See also Burton v. Public Finance Corp. of Akron # 3*, 657 F.2d 842, 843 (6th Cir.1981) ("Finance companies can write simple sentences and use simple words to inform consumers of the terms of loan agreements. However, when a loan agreement is drafted to obscure the relevant terms of the agreement, rather than to explain the terms in clear and meaningful language, the agreement violates the TILA."); *Smith v. Chapman*, 614 F.2d 968, 975 (5th Cir.1980) (use of "meaningless" terms in delinquency charge clause violates TILA).

█ "The requirements of the TILA are highly technical but full compliance is required. (citation omitted). Even minor violations of the Act can not be ignored." *Griggs*, 503 F.Supp. at 250 (citing *Thomka*, 619 F.2d at 248). Moreover, the "TILA is a remedial act intended to protect consumers ... and, as such, its provisions are to be construed liberally in favor of consumers." *Belmont v. Associates National Bank*, 119 F.Supp.2d 149, 159 (E.D.N.Y. 2000) (citing 15 U.S.C. § 1601(a); *Ellis v.*

*General Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir.1998); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir.1998), *cert. denied*, 528 U.S. 868, 120 S.Ct. 166, 145 L.Ed.2d 141 (1999); *N.C. Freed Co. v. Board of Governors of Fed. Reserve Sys.*, 473 F.2d 1210, 1214 (2d Cir.1973)). "TILA achieves its remedial goals by a system of strict liability in favor of the consumers when mandated disclosures have not been made." *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 898 (3d Cir.1990). The court need find "only a single violation of the statutory requirements to hold [a] defendant liable under the TILA." *Griggs*, 503 F.Supp. at 248 (citing 15 U.S.C. § 1640; *Thomka*, 619 F.2d 246).

### III. Analysis

#### A. *Consumer Lease*

█ AHFC challenges whether the CLA applies to the lease at issue because Clement has not sufficiently shown that she leased the vehicle at issue "primarily for personal, family, or household purposes." *See Turner*, 180 F.3d at 454 n. 2 ("The CLA applies to all leases for the use of 'personal property' having a term 'exceeding four months' that have a 'total contractual obligation not exceeding $25,000.' 15 U.S.C. § 1667(1)."). AHFC agrees that Clement alleges that the lease was a personal lease and that Clement's initial affidavit indicates that Clement initialed the box on the lease that indicates the lease was "primarily for personal, family or household purposes." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment

**1.** The same general rules of construction applicable to the TILA apply to the CLA. *See Miller v. Nissan Acceptance Corp.*, 2000 WL 1599244 at *16 (E.D.Pa.2000); *Pettola v. Nissan Motor Acceptance Corp.*, 44 F.Supp.2d 442, 447 (D.Conn.1999); *Gaydos v. Huntington Nat'l Bank*, 941 F.Supp. 669, 675 (N.D.Ohio 1996) (holding that, in interpreting the CLA, courts should borrow TILA definitions, damage provisions, and general rules of construction).

and in Support of Defendant's Cross–Motion for Summary Judgment ("Def.Mem.") at 5. In addition, Clement has submitted a second affidavit stating that the leased car was used solely for personal transportation and that a business-related tax deduction was never taken for the lease of the vehicle, *see* Clement Affidavit at ¶¶ 2–3, Exhibit A, attached to Plaintiff's Reply Memorandum of Law in Support of Her Motion for Summary Judgment ("Pl. Reply Mem."), and a copy of the lease that shows she initialed the box in the lease that indicates the lease was a consumer lease used "primarily for personal, family or household purposes." Exh. B, attached to Pl. Reply Mem.

Contrary to AHFC's assertion, Clement has adduced sufficient evidence to show that the lease at issue was primarily for consumer purposes. AHFC has not met its burden to show there is an absence of a genuine issue of material fact and has produced no contradictory evidence to create a genuine issue of material fact.

AHFC argues that "it would be premature for the Court to rule on Plaintiff's motion for Summary Judgment until AHFC has been afforded the opportunity to take discovery with respect to the nature of the primary use that Plaintiff intended to make of the leased vehicle" because Clement has failed to respond to AHFC's interrogatories. Def.Mem. at 6–7. Discovery in this case has been closed since October 13, 1995. *See* Amended Order on Pretrial Deadlines dated June 9, 1995. In the absence of any motion to compel Clement to answer the interrogatories or any attempt by AHFC to address Clement's alleged failure to answer the interrogatories, AHFC's argument fails.

*See also* Ruling dated December 1, 1999. Accordingly, the court resolves the question of the applicability of the CLA to the lease at issue in favor of Clement.[2]

## B. *Required Disclosures Under the CLA*

Clement claims that AHFC has violated the CLA by failing to comply with several of the CLA's disclosure requirements.

### 1. *Early Termination Within the First Twelve Months*

■ Clement contends that "there is no explanation of the leasee's [sic] liability for voluntary termination of the lease before the expiration of the first year." AHFC is correct that this contention is meritless. Although the lease does not explicitly say so, the obviously applicable paragraphs—paragraphs 11, 16, and 23—make clear that a lessee cannot voluntarily terminate in the first year, but the lessor can if the lessee is in default. No reasonable juror could find for Clement on this argument. Therefore, summary judgment is granted in favor of AHFC on this issue.

### 2. *Early Termination Provision*

■ Clement next contends that AHFC failed to disclose the early termination provisions of the lease in a "clear and conspicuous" manner, as required by the CLA.

AHFC's lease provides in relevant part:

**11. EARLY TERMINATION LIABILITY:** At any time after 12 monthly lease payments have been paid, you may terminate this Lease on the due date of a monthly lease payment if this Lease is not in default. At any time after you

---

2. The court did not consider Clement's Exhibit G and H attached to Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl.Mem."). Therefore, the court need not address AHFC's assertion that those exhibits are inadmissible as supporting evidence.

sign this Lease, Lessor may terminate if the Lease is in default as stated in Item 23 or if the conditions stated in Item 16 occur. You agree that your payment liability upon early termination will be the sum of (a) any monthly lease payments already due and unpaid and any other amounts owed arising from your failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the amount, if any, by which the then adjusted lease balance exceeds the realized value of the vehicle at early termination; plus (d) if you do not purchase the vehicle, a disposition fee of $400.

To figure the payment due upon early termination, a reader must refer back to paragraph 10 to determine her monthly lease payment amount. That section provides:

**10. MONTHLY LEASE PAYMENT ALLOCATION:** As indicated in Item 3a through 3c, portions of each Base Monthly Lease Payment are for depreciation and lease charge. While the total amount of each Base Monthly Lease Payment will be the same, the depreciation and lease charge portions will differ with each payment. This is why the amounts in Item 3a and 3b are labeled "Average Monthly" amounts. The next paragraph explains how the lease charge portion of any Base Monthly Lease Payment is figured. The lease charge for the entire lease term (Item 3a times the number of months in the lease term shown in Item 2) will be earned on a constant yield basis in relation to the "adjusted lease balance" as it declines during the lease term. The lease charge portion for any monthly lease payment is figured by multiplying the rate which provides a constant yield times the adjusted lease balance. At any given time the adjusted lease balance is the differ-

ence between the "Initial Lease Balance" and the sum of (1) all depreciation amounts to date and (2) the first Base Monthly Lease Payment shown in Item 3c. The "Initial Lease Balance" is the sum of (a) the product of the number of monthly lease payments due during the lease term shown in Item 2 times the Average Monthly Depreciation shown in Item 3b and (b) the Estimated End of the Lease Term Vehicle Value shown in Item 6. The monthly lease charge calculations are based on the assumption that you will make the monthly lease payments on their exact due dates and that the Lease goes full term. These calculations follow the rules for journal entries for Lessors as to the "direct financing leases" set forth in **Statement of Financial Accounting Standards No. 13** issued by the Financial Accounting Standards Board.

The portion of a monthly lease payment which is not applied to lease charge or to items as shown in 3d through 3g will be credited to depreciation. The depreciation portions of the monthly lease payments reduces your liability if this Lease is terminated early and your purchase option price if the option is then available.

The early termination and adjusted lease balance language quoted above from AHFC's automobile lease is almost identical to the language that the Court considered in *Lundquist*. *See Lundquist*, 993 F.2d at 13 (lease paragraph 16 (Early Termination Liability) and paragraph 8 (Allocation of Monthly Lease Payment)). Here, as in *Lundquist*, paragraph 11 (Early Termination Liability) must be read in light of the earlier paragraph 10 (Monthly Lease Payment Allocation) to understand the terms in paragraph 11. In *Lundquist*, however, unlike the present case, the Early Termination paragraph expressly refers

the reader back to the earlier paragraph, making the sequencing in the *Lundquist* lease clearer than in the AHFC lease.

The events at issue in *Lundquist* and in this case both occurred before the 1996 amendments to Regulation M (Revised Regulation M) [3] and the 1997 Official Staff Commentary to the Revised Regulation M that interprets the early termination disclosure requirements of Regulation M, 12 C.F.R. § 213.4.[4] *See* Def.Mem. at 8. Although the court recognizes that the Regulations and the "Federal Reserve Board staff opinions construing the Act or Regulation should [generally] be dispositive," *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), it is the version of Regulation M and the accompanying Staff Commentary in place at the time Clement signed the lease that control. *See Applebaum*, 226 F.3d at 222 n. 7 ("duty to disclose is breached, if at all, at the time of lease consummation. 15 U.S.C. § 1667a."); Def. Mem. at 2 n. 2.

Therefore, the 1992 version of Regulation M, which was the same version in place at the time the Second Circuit decided *Lundquist*, applies here.[5] Neither the Revised Regulation M nor the 1997 Official Staff Commentary to the Revised Regulation M applies to this case. *See Applebaum*, 226 F.3d at 221 (the Official Staff Commentary to the current version of Regulation M does not change the law retroactively). Thus, because of the similarity of the issue, language, and applicable law in *Lundquist* and the case at hand, *Lundquist* is controlling.

There is no question that if this case were decided in the Seventh Circuit a different outcome would be required. *See Clement v. American Honda Finance Corp.*, 176 F.R.D. 15, 22–23 (D.Conn.1997) ("As to the CLA claim, the standard for determining whether a lease agreement violates the CLA is much higher in the Seventh Circuit than it is in the Second Circuit," comparing *Lundquist*, 993 F.2d at 15 with *Channell v. Citicorp Nat'l Serv., Inc.*, 89 F.3d 379, 383 (7th Cir.1996)). AHFC urges adoption of the Seventh Circuit precedent here. This court, cannot, however, either overlook or overrule binding Second Circuit precedent.

In reaching the conclusion that the AHFC lease violates the CLA, it is not necessary to accept Clement's assertion that *Lundquist* holds that the "standard for determining whether a disclosure complies with the CLA is whether the formula is *'beyond the understanding of the ordinary consumer.'* " Pl.Mem. at 2 (quoting *Lundquist*, 993 F.2d at 14) (emphasis added). Whether the "understanding of the ordinary consumer" reference was a holding or dicta, *Lundquist* did hold that lease disclosures must "be reasonably understandable," *id.* at 15, which AHFC's disclosures are not. *See also Applebaum*, 226 F.3d at 220 (interpreting "reasonably understandable form" language of 12 C.F.R. pt. 213, supp. I, § 213.4(a)(1), and holding that "the method of calculating an early termination provision must not only be

---

**3.** The plaintiff in *Lundquist* signed the lease in June 1988, *Lundquist*, 993 F.2d at 12, and Clement signed her lease in 1992.

**4.** Regulation M, codified at 12 C.F.R. § 213 et seq., are the regulations that the Federal Reserve Board issued to "update and clarify the requirements and definitions applicable to lease disclosures." *Turner*, 180 F.3d at 454.

**5.** Subsequent references to Regulation M and the Official Staff Commentary are to the 1992 version, unless otherwise indicated. The Revised Regulation M refers to the 1996 amended version.

legible; it must also be 'reasonably understandable,'" not necessarily within "the understanding of the average consumer" but "reasonable depend[ing] on the surrounding circumstances.").

Although the court in *Lundquist* did not explain its reasoning in great detail, it did explain, relying under the then-existing regulatory framework, that:

> Under the CLA and Regulation M, disclosures on a consumer lease must be made "accurately and in a clear and conspicuous manner," 15 U.S.C. § 1667a, "in meaningful sequence," 12 C.F.R. § 213.4(a)(1), and in "a reasonably understandable form," 12 C.F.R. pt. 213, supp. I, § 213.4(a)(1) (official staff commentary). [W]e agree with the district court that the Security Pacific lease disclosures are not reasonably understandable. They are confusing, unduly complicated, and unnecessarily convoluted.

*Lundquist*, 993 F.2d at 15.

Here, the language in the AHFC lease concerning early termination is not reasonably understandable in form and in substance. Paragraph 11 on its face is fairly straightforward and simple in its presentation, but it provides primarily the structure of the early termination payment liability, not the substance that gives meaning to that structure. Some of the necessary structure is found in paragraph 10. Paragraph ten, however, contains too many concepts piled into a single paragraph. As a matter of form, therefore, paragraph ten is complicated and unduly convoluted.

The reader must dig through the concepts of variable depreciation and lease charge portions of the monthly payment, the method of calculating the lease charge portion of the monthly payment by "multiplying the rate which provides a constant yield times the adjusted lease balance," the application of the Statement of the Financial Accounting Standards No. 13, and the manner in which credits to depreciation reduces early termination liability—in order to find the method for determining the adjusted lease balance, which is in turn dependent on the calculation of depreciation credits, the first base monthly payment and the calculation of the initial lease balance. Simply put, the presentation of the language in paragraph ten prevents the early termination penalties from being disclosed in "a reasonably understandable form." *Lundquist*, 993 F.2d at 15 (citing 12 C.F.R. pt. 213, supp. I, § 213.4(a)(1) (official staff commentary)); *see also* 12 C.F.R. Pt. 213, Supp. I–C1–1, § 213.4(a)(1)(1) (1992) (the disclosures must be presented in a way that does not obscure the relationship of the terms to each other); *Burton*, 657 F.2d at 843 ("complex accounting terms and confusing syntax ... obscure the meaning of this clause").

AHFC mischaracterizes its early termination language as simply the name of a method—the constant yield basis—and a narrative explanation of that method. *See* Def.Mem. at 14. As in *Lundquist*, the language in paragraph ten of AHFC's lease "involve[s] more steps and more complicated calculations, not [simply] a method of calculation such as the 'constant yield method.'" *Applebaum v. Nissan Motor Acceptance Corp.*, 1999 WL 236601 at *5 (E.D.Pa.1999), *overruled on other grounds*, 226 F.3d 214 (3rd Cir.2000) (analyzing the *Lundquist* lease). Moreover, naming a method without a full descriptive narrative would not, as AHFC contends, Def.Mem. at 17, be legally sufficient, even under the 1997 Official Commentary to Revised Regulation M. The 1997 Official Commentary to Revised Regulation provides:

> Description of the method. Section 213.4(g)(1) *requires a full description of*

*the method of determining an early termination charge.* The lessor should attempt to provide consumers with clear and understandable descriptions of its early termination charges. *Descriptions that are full, accurate, and not intended to be misleading* will comply with § 213.4(g)(1), even if the descriptions are complex. In providing a full description of an early termination method, *a lessor may use the name of a generally accepted method of computing the unamortized cost portion (also known as the "adjusted lease balance") of its early termination charges. For example, a lessor may state that the "constant yield" method will be utilized in obtaining the adjusted lease balance, but must specify how that figure, and any other term or figure, is used in computing the total early termination charge imposed upon the consumer.* Additionally, if a lessor refers to a named method in this manner, the lessor must provide a written explanation of that method if requested by the consumer. The lessor has the option of providing the explanation as a matter of course in the lease documents or on a separate document.

12 C.F.R. Pt. 213, Supp. I (1997 Official Commentary to Revised Regulation) (emphasis added).

The fact that AHFC refers to a defined term—the constant yield basis—does not save an otherwise obscure and convoluted paragraph. *See* 12 C.F.R. § 213.4(b) ("At the lessor's option, additional information or explanations may be supplied with any disclosure required by this regulation, but none shall be stated, utilized, or placed so as to mislead or confuse the lessee or contradict, obscure, or detract attention from the information required to be disclosed.").

In addition, the substance of paragraph ten does not provide "a meaningful disclosure of the terms of [a] lease[ ] . . . so as to enable the lessee to compare more readily the various lease terms available to him." *Turner*, 180 F.3d at 454 (quoting 15 U.S.C. § 1601(b)). Specifically, paragraph ten states that "portions of each Base Monthly Lease Payment are for depreciation and lease charge." Although the "depreciation and lease charges will differ with each payment," the lease provides, and paragraph ten specifically references, an average monthly lease charge and depreciation figure. *See* Lease, ¶ 10 (referring to Sections 3a and 3b).

A lessee cannot determine, or even estimate, from that information what portion of the base monthly lease payment is for depreciation in any given month. AHFC's averaging masks the effective rate of depreciation over the term of the lease. That use of averaging, therefore, raises "the possibility of deception, misinformation, or at least an obliviousness to the true costs' of a credit transaction," not only to the "inexperienced and uninformed consumer," but to any consumer. *Griggs*, 503 F.Supp. at 249 (quoting *Thomka*, 619 F.2d at 248). *See also Applebaum*, 226 F.3d at 222–23 ("An early termination clause that fails to reveal an otherwise unknowable variable used in determining an early termination penalty cannot be regarded as 'reasonably understandable' in any meaningful sense of the term," holding that the "requirement to disclose in a 'clear and conspicuous manner' the method of determining the amount of an early termination charge includes an obligation to disclose the value of a variable . . . that is an essential component of the formula used in calculating the charge.").

For the foregoing reasons, AHFC's early termination language violates the CLA.

### 3. *The Warranty Provision*

#### a. Express Warranty

■ AHFC's warranty disclosure also violates the CLA. AHFC's lease provides in relevant part:

**13. VEHICLE WARRANTIES:** YOU ACKNOWLEDGE THAT YOU ARE LEASING A VEHICLE AS IS AND THAT LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE VEHICLE, AND SPECIFICALLY DISCLAIMS ANY WARRANTIES IMPLIED BY LAW, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. However, to the extent the vehicle is still subject to the manufacturer's new vehicle warranty, Lessor assigns to you all the rights and remedies under that warranty, to the extent they are assignable.

AHFC's lease does not contain "[a] statement identifying any express warranties . . . available to the lessee made by the . . . manufacturer with respect to the leased property." Regulation M, 12 C.F.R. § 213.4(g)(7) (1992). Although the phrase "to the extent the vehicle is still subject to the manufacturer's new vehicle warranty" is brief and does refer to the manufacturer's warranties, *see* Commentary to Regulation M, 213.4(g)(7)–1,[6] it does not identify which manufacturer's warranties, if any, are available to the lessee. In fact, "it gives the lessee no information whatsoever." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 440 (7th Cir.1994) (applying the 1992 version of Regulation M, language in car lease "may be subject to a separate written warranty from the manufacturer" squarely violates the disclosure requirement of the CLA).

The court agrees with the District Court in *Tarnoff v. American Honda Finance Corp.*, which found that the identical language in another AHFC car lease violated the requirement to disclose the identity of any available warranties. 1997 WL 461059 at *7 ((N.D.Ill.1997)) ("to the extent the vehicle is still subject to the manufacturer's new vehicle warranty, Lessor assigns to you all rights and remedies under that warranty to the extent that they are assignable"); *see also Demitropoulos v. Bank One Milwaukee*, 915 F.Supp. 1399, 1409–10 (N.D.Ill.1996) (statement "that the only warranties applicable to the vehicle are written warranties separately made by the manufacturer," does not identify any particular warranty and thus violates the CLA, particularly when accompanied by the words "AS IS," which obscures the later language); *Hildabrand v. DiFeo Partnership, Inc.*, 89 F.Supp.2d 202, 207–08 (D.Conn.2000) (citing *Highsmith*, 18 F.3d at 440, for the proposition that a warranty disclosure is insufficient if it states only that there "may be" a warranty, but lease at issue satisfied disclosure requirement because it states that a new vehicle "is" covered by a manufacturer's new vehicle warranty). Thus, AHFC's disclosure regarding the manufacturer's express warranties does not comply with the CLA.

#### b. Implied Warranty Disclaimer

Because AHFC's disclosure for the express warranty violates the CLA, the court does not need to reach the issue of the implied warranty disclaimer.

---

**6.** "The statement identifying warranties may be brief. For example, manufacturer's warranties may be identified simply by a reference to the standard manufacturer's warranty." Commentary to Regulation M, 213.4(g)(7)–1 (1992).

End.

## IV.  Conclusion

The court has considered the parties' remaining arguments and finds them to be without merit.  Therefore, Clement's motion for summary judgment is granted in part and denied in part and AHFC's cross-motion for summary judgment is granted in part and denied in part.  Because two of AHFC's lease provisions violate the CLA, judgment on the issue of liability must enter in favor of the plaintiff.  *See Griggs,* 503 F.Supp. at 248 (citing 15 U.S.C. § 1640; *Thomka,* 619 F.2d 246) (court need find "only a single violation of the statutory requirements to hold defendant liable under the TILA").

It is so ordered.