[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 20, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15302

_____

D. C. Docket No. 00-01254-CV-TWT-1

VALENCIA CARMICHAEL,

Plaintiff-Appellant,

versus

NISSAN MOTOR ACCEPTANCE
CORPORATION UNION CITY NISSAN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 20, 2002)**

Before BLACK and HULL, Circuit Judges, and LAZZARA*, District Judge.

PER CURIAM:

_____
*Honorable Richard A. Lazzara, U.S. District Judge for the Middle District of Florida, sitting by designation.

This is a case of first impression concerning the Consumer Leasing Act, 15 U.S.C. §§ 1667-1667f ("CLA"). According to the language of the CLA, the one-year statute of limitations begins to run at "the termination of the lease agreement." 15 U.S.C. § 1667d(c). The issue is whether voluntary or involuntary repossession of a leased automobile constitutes "termination of the lease agreement" when such repossession occurs prior to the actual date of lease termination. We affirm the district's court order holding that repossession, voluntary or otherwise, constitutes termination of the lease under the CLA.

## PERTINENT BACKGROUND

On May 3, 1997, Valencia Carmichael entered into an automobile lease with Union City Nissan, Inc. When the lease was executed, it was immediately assigned to Nissan Motor Acceptance Corporation ("NMAC") in accordance with the terms of the lease. The lease required forty-two monthly payments with an expiration date of November 2000. The lease listed $8,893.26 as the "residual value" of the automobile. Pursuant to the terms of the lease, the "residual value" is defined as the estimated value of the automobile at the end of the lease.

Ms. Carmichael experienced financial difficulties in 1999 and notified NMAC that she could not make the payments pursuant to the lease. She allegedly arranged to make only partial payments past the original due dates.

2

Notwithstanding the purported agreement, NMAC repossessed the vehicle on May 7, 1999, for failure to make rental payments. On July 8, 1999, NMAC notified Ms. Carmichael by letter that the repossessed vehicle had been sold for $6,500.00, and the deficiency balance owed on the lease was $8,948.08. NMAC arrived at the balance based roughly on the unpaid balance of the lease, which was $14,340.94, and other incurred expenses less the sale proceeds and the refundable security deposit.

Ms. Carmichael filed this lawsuit on May 19, 2000, which was more than one year past the uncontroverted May 7, 1999, date of repossession. She contends in part that NMAC inflated the vehicle's original residual value. She also asserts that NMAC's early termination formula is unreasonable and therefore in violation of the CLA. Not only does she request relief in her individual capacity, she seeks to represent a class of individuals having similar claims.

NMAC filed a motion to dismiss the amended complaint based on the CLA's statute of limitations. Because the statute of limitations defense was not apparent from the face of the amended complaint, the district court properly converted NMAC's motion to dismiss into a motion for summary judgment. In so doing, the district court ordered Ms. Carmichael to produce evidence showing there was a genuine issue of fact as to NMAC's claim that the vehicle was

3

repossessed on May 7, 1999.  Ms. Carmichael conceded the date of repossession, but argued that the lease did not terminate until the assessment of early termination charges on July 8, 1999.  The district court granted the motion and ordered the clerk to enter a judgment dismissing all claims.  This timely appeal followed from the judgment of dismissal.

## STANDARD OF REVIEW

Regardless of a district court's labeling of a judgment as a dismissal or a summary judgment, the appellate court must determine the substance of the ruling.  See Charles J. Arndt, Inc. v. City of Birmingham, 748 F.2d 1486,1489-90 (11th Cir. 1984) (quoting Tuley v. Heyd, 482 F.2d 590, 593 (5th Cir. 1973)).  The district court in this case converted the motion to dismiss into a motion for summary judgment.  The record reveals that the district court considered additional facts outside the pleadings to resolve the motion.  We therefore review the district court's judgment in conformance with the standards for reviewing summary judgments.  Because the material facts are not in dispute and the only issue is one of law, we review the order of the district court *de novo*.  See Heuer v. United States Sec'y of State, 20 F.3d 424, 426 (11th Cir. 1994) (citing Woodruff v. United States Dept. of Labor, 954 F.2d 634, 636 (11th Cir. 1992)).

## THE CLA

In 1976, Congress passed the CLA as an amendment to the Truth-in-Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* The CLA extended the TILA's disclosure requirements to consumer leases. See Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214, 217-18 (3d Cir. 2000) (discussing the purpose of the legislation), cert. denied, 533 U.S. 929 (2001). In general, a consumer lease means a contract for the use of personal property, such as an automobile, for a period exceeding four months and for a "total contractual obligation" not exceeding $25,000. See 15 U.S.C. § 1667(1).

In keeping with Congress' intended emphasis on disclosure rather than regulation, the CLA requires full disclosure of the leasing terms and does not regulate the terms and conditions of any particular consumer lease. See Turner v. Gen. Motors Acceptance Corp., 180 F.3d 451, 454 (2d Cir. 1999). Congress articulated the purpose behind the CLA as one of assurance of meaningful disclosure:

> It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements.

5

15 U.S.C. § 1601(b). The CLA specifies the disclosures the lessor must provide to the lessee at the time of entering into a consumer lease. See 15 U.S.C. § 1667a.

The CLA incorporates some of the TILA's provisions dealing with civil remedies. See 15 U.S.C. § 1667d(a) (lessor is liable as provided in section 1640 of this title); Gaydos v. Huntington Nat'l Bank, 941 F. Supp. 669, 672 n.2 (N.D. Ohio 1996). The definitions and rules of construction set forth in section 1602 of the TILA are applicable to the CLA. See 15 U.S.C. § 1602(a); Clement v. Am. Honda Fin. Corp., 145 F. Supp. 2d 206, 210 n.1 (D. Conn. 2001). Courts have used the TILA's definitions and general rules of construction, when possible, in interpreting the CLA. See, e.g., Wiskup v. Liberty Buick Co., 953 F. Supp. 958, 969 (N.D. Ill. 1997). Like the TILA, the CLA is a consumer protection statute which "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent." Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (11th Cir. 1998) (citing McGowan v. King, Inc., 569 F.2d 845, 848 (5th Cir. 1978)); Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442, 447 (D. Conn. 1999) (noting CLA is remedial legislation to be liberally construed in favor of lessee).

The civil remedy provision of the CLA provides that a civil action brought by a lessee must be filed within one year of "the termination of the lease

6

agreement." 15 U.S.C. § 1667d(c). The CLA, however, does not define the word "termination." The question presented in this appeal is whether "termination" occurred when the automobile in this case was repossessed.

**ANALYSIS**

Relying on Pettola v. Nissan Motor Acceptance Corp., 44 F. Supp. 2d 442 (D. Conn. 1999), the district court held that a lease terminates for purposes of the CLA when the claimant releases possession of the vehicle, either voluntarily or otherwise. See also Highsmith v. Chrysler Credit Corp., 150 B.R. 997, 1001 (N.D. Ill. 1993), aff'd in relevant part and rev'd in part on other grounds, 18 F.3d 434, 436 (7th Cir. 1994) (holding lease terminated on date bankruptcy court entered agreed order rejecting lease, which allowed lessor to retake possession of car); Kedziora v. Citicorp Nat'l Serv., Inc., 844 F. Supp. 1289, 1292 (N.D. Ill. 1994) (finding default occurred when car was totally destroyed in accident, thereby triggering early termination of lease). We agree with the district court.

In Pettola, the court held that the automobile lease was terminated when the lessee failed to make the required rental payments and voluntarily surrendered her car to the dealer. At the time of surrender, the plaintiff had signed a "Federal Odometer/Lease Termination Statement." As noted by the court in Pettola, the statute of limitations in the CLA refers to the "termination" of the lease rather than

7

the expiration of the term set forth in the lease.  See Pettola, 44 F. Supp. 2d at 448.

Moreover, the CLA requires disclosures regarding the consequences of "early

termination."  See 15 U.S.A. § 1667a(11); Regulation M, 12 C.F.R. § 213.4(g).

The references to "early termination" evidence the CLA's contemplation that a

lease may be terminated prior to the actual date of expiration of the lease.

In this case, the fact that Ms. Carmichael's car was repossessed instead of

voluntarily turned over to a dealer makes no difference in our analysis of what

constitutes "termination" for the purposes of the statute of limitations.  Under

either scenario, Ms. Carmichael, as customer-lessee, no longer has the vehicle

which is the subject of the lease, and a termination of the lease has occurred before

the expiration date of the lease.[1]  The lease conveyed a right to Ms. Carmichael to

possess the car, so repossession terminated that right.  Repossession was, therefore,

the act which signified to Ms. Carmichael that NMAC was exercising its option to

---

[1] In this regard, we also expressly reject Ms. Carmichael's claims that the lease was not terminated until the date her repossessed vehicle was sold and assessments calculated according to her lease.  In addition, we note that Ms. Carmichael on appeal does not argue that any state law impacts or informs the definition of termination of a lease for a vehicle, and thus we do not address whether that is a possibility.  See In re Lamar, 249 B.R. 822 (Bankr. S.D. Ga. 2000).

We can also envision other scenarios where the particular facts of the case may affect the determination of when termination occurs for the purposes of the CLA.  For example, a creditor who cannot locate the vehicle might give written notice that the lease is terminated for failure to make timely payments.  We hold, therefore, only that repossession of Ms. Carmichael's vehicle in this case was sufficient to terminate the particular lease at issue on May 7, 1999, so as to trigger the CLA's statute of limitations.

terminate the lease.[2]  Moreover, Ms. Carmichael's lease did not require NMAC to give either prior written notice of intent to terminate or written notice of the actual termination.  Thus, even though NMAC might not have sold the repossessed vehicle until some later date, the lease in this case was terminated upon the return of the vehicle to the possession of the dealer or lessor.

In conclusion, based on the above analysis, we agree with the district court that the lease in this case terminated on the date of repossession and not some later date.  We reject, as did the district court, the various arguments concerning the tolling of the statute of limitations.

AFFIRMED.

---

2 That NMAC offered Ms. Carmichael an option to redeem the vehicle by paying the entire unpaid adjusted lease balance, sales tax, and charges for repossession and collection is not inconsistent with our conclusion that the lease was terminated as of the date of repossession.  In pursuing redemption, Ms. Carmichael effectively was required to buy the car, thereby owning it outright as opposed to leasing it from NMAC.