Mercie T. CANDELARIA and Raymond L. Candelaria, Plaintiffs,

v.

NISSAN MOTOR ACCEPTANCE CORPORATION, a foreign corporation, Cal Fed Credit, a foreign corporation, and Melloy Brothers, Inc., d/b/a Melloy Nissan, Los Altos Mitsubishi and Melloy Dodge, a New Mexico Corporation, Defendants.

No. Civ. 89–1030 JC.

United States District Court, D. New Mexico.

June 27, 1990.

Richard J. Rubin, Santa Fe, N.M., for plaintiffs.

Kenneth R. Wagner, of Franchini, Wagner, Oliver, Franchini & Curtis, Albuquerque, N.M., for defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

CONWAY, District Judge.

THIS MATTER is now before the Court on the plaintiffs' Motion for Partial Summary Judgment for Violations of the Federal Consumer Leasing Act, filed October 31, 1989. Having reviewed the memoranda

of the parties, and being otherwise fully advised in the premises, the Court finds that the motion is well-taken and will be granted.

The subject matter of this motion is the plaintiffs' allegation that the defendants Melloy Brothers, Inc., d/b/a Melloy Nissan, Los Altos Mitsubishi, and Cal Fed Credit violated the Federal Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.* by failing to disclose relevant terms in association with a lease agreement for a 1987 Nissan Sentra. The basic facts are as follows.

In January of 1987, the plaintiffs went to Melloy Nissan, a motor vehicle dealership, to shop for a vehicle for their personal needs. The plaintiffs acquired a 1987 Nissan automobile through a consumer leasing agreement arranged by Melloy Nissan with Nissan Motor Acceptance Corporation ("NMAC"). The lease agreement serves as the disclosure statement required by the Federal Consumer Leasing Act, (hereinafter "CLA"), and Federal Reserve Board Regulation M, 12 C.F.R. §§ 213.1 *et seq.* (hereinafter "Regulation M"). Two years after the lease just referenced, the plaintiffs returned to the Melloy dealership in an attempt to purchase a new vehicle, using the leased Nissan as a trade-in. The plaintiffs allege that, partially as a result of the defective disclosure of the lease terms in the original agreement, Melloy was able to misrepresent the terms of the second transaction in violation of the Federal Truth in Lending Act and various state laws.

Nissan Motor Acceptance Corporation is a foreign corporation doing business in the state of New Mexico as a motor vehicle finance company and is a lessor as defined by Regulation M. Melloy Nissan is a motor vehicle dealer in Albuquerque, New Mexico, which regularly arranges for the leasing of personal property under a consumer lease and is therefore a "lessor" as defined by Regulation M. The plaintiffs are natural persons who leased the 1987 Nissan Sentra to be used for their personal needs and thus are "lessees" as defined by Regulation M.

While the totality of the alleged violations forms the basis for the plaintiffs' causes of action under both federal and state law, the plaintiffs have only moved for partial summary judgment on the issue of the statutory liability of Melloy Nissan and NMAC for the alleged disclosure violations of the CLA and Regulation M in the January 1987 transaction.

PART I

■ The plaintiffs have moved for summary judgment as to the issue of statutory liability on three different bases. First, they argue that the lease fails to accurately disclose the amount paid by them at the consummation of the transaction. Section 213.4(g)(2) of Regulation M states:

> The total amount of any payment, such as a refundable security deposit paid by cash, check or similar means, advance payment, capitalized cost reduction or any trade-in allowance, appropriately identified, to be paid by the lessee at consummation of the lease

The official staff commentary to this section, which is granted the force of law under *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), provides the following additional detail: "The lessor must disclose one total initial payment amount and identify the components of this one amount."

Paragraph 1 of the lease agreement lists the components and each cost and the "Total Payment Due On Signing." The three components which are itemized are advance monthly payments ($164.60), registration fees ($49.80), and EX TAX ($177.68). The total then disclosed on the leasing form is $567.08 when in fact the applicable numbers total $392.08, $175.00 less than the disclosed total on the lease. The plaintiffs argue that this mathematical mistake establishes the defendants' liability for violation of Section 213.4(g)(2).

In response to this argument, the defendants indicate that the $175.00 error is merely a clerical error and thus falls within the exceptions to statutory liability defined in the CLA. The defendants further assert that at all times they maintained a good-

faith effort not to make such clerical errors and that this is a simple *bona fide* mathematical mistake. Insofar as the plaintiffs have established a violation of the statutory language, the burden shifts to the defendants to establish an exception to liability or the existence of a genuine issue of material fact in order to avoid summary judgment. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The defendants offer their reading of the case of *Mirabal v. General Motors Acceptance,* 537 F.2d 871 (7th Cir.1976) in support of the contention that their failure to accurately disclose the amount paid at consummation does not render them liable if the error was made in the course of a good-faith attempt at compliance with the CLA's disclosure requirements. This defense requires a showing that the violation was not intentional and resulted from a bona fide error, and that it occurred notwithstanding maintenance of procedures reasonably adapted to avoid such mathematical errors. *Thomka v. AZ Chevrolet, Inc.,* 619 F.2d 246 (3rd Cir.1980). While the defendants have admitted that the $175.00 difference between the total sum stated in the lease is inaccurate, the defendants also assert that this was simply the $175.00 cost of the security deposit which was inadvertently left out of the lease agreement.

■ The *Mirabal* defense is only applicable when the defendant has made a good-faith attempt at compliance with all of the requirements of the statute. In *Mirabal* the Court held that "when no procedures are set up to provide correct disclosure calculations, or when untrained employees are left to calculate disclosure figures, errors made do not rise to the level of *bona fide* errors." *Mirabal,* 537 F.2d at 878, n. 13.

According to the testimony of the defendants' own witness, Mr. Bowdoin, an untrained employee was left to calculate the disclosure figure and prepare the lease form at issue in this case. It is also apparent from the testimony of the same witness, Mr. Bowdoin, that no standard procedure for rechecking clerical work on lease agreements existed at the time of the execution of this particular lease. In fact, Mr. Bowdoin indicates that he does not know how the initial information was presented to the telephone operators who typed the leases, and that there were in fact no normal procedures in place to have the tasks performed.

In *Gallegos v. Stokes,* 593 F.2d 372 at 376 (10th Cir.1979), the Tenth Circuit indicated that the use of the *Mirabal* defense "requires procedures designed to avoid and prevent errors which might slip through [the first prong] procedures aimed at good-faith compliance." When asked if any such procedures occurred in 1987, Mr Bowdoin responded as follows: "Not a procedure. I normally in the course of business would look over everything, but no procedure."

In fact, Bowdoin's own explanation of his review process reveals that he simply checked to assure that there was "something" in every blank on the lease without regard to the substance of the "something" that was contained in each blank.

Neither this Court, nor a rational trier of fact, could reasonably conclude that the procedure followed by Mr. Bowdoin was designed to avoid and prevent errors. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This Court now finds that the defendants are not entitled to the clerical error defense of their conduct in this matter. Since the plaintiffs have established that a statutory violation did in fact occur, and the defendants have no response other than the clerical error defense, the Court will award summary judgment on this first issue.

PART II

■ The plaintiffs' second purported basis for summary judgment regards the requirement of Regulation M, found at section 212.4(g)(4), which indicates that lessors must disclose the "total amount paid or payable by the lessee during the lease term

for official fees, registration, certificate of title, license fees, or taxes."

The defendants do in fact list a figure which purports to comply with the regulation—$277.00. However, the monthly Use or Rental tax as disclosed in paragraph 2(b) of the lease agreement indicates a $7.65 per month component for 48 months. This single component, when multiplied by the 48–month lease term exceeds the total disclosed in the lease agreement. In addition, the lease agreement discloses other components including the $49.80 registration fee plus excise tax of $177.68. Thus, the required disclosed total according to the plaintiffs should be $594.68 when in fact the disclosed total is $277.00.

In response to these apparent inconsistencies, the defendants claim that they made a good-faith attempt to accurately disclose the official fees and costs during the lease terms and that any failure to fully disclose was unintentional and occurred despite procedures reasonably adapted to avoid this type of error. In the affidavit of Mr. Bowdoin, submitted along with the defendants' Memorandum in Opposition to Summary Judgment, the affiant admits that the defendants failed to calculate the $7.65 use tax on a per month basis for purposes of satisfying Regulation M. The affiant suggests that this Use tax is separate and distinct from the fees and taxes contemplated by paragraph 5 of the lease agreement and therefore should not be included in the calculations under Regulation M. Oddly, the manner in which Mr. Bowdoin chose to calculate the total taxes payable omits the single largest component of taxes to be paid by the lessee during the lease term. The failure to include both the monthly tax and the initial registration fee in the total tax and fee disclosure is precisely the conduct which one commentator has identified specifically as a violation of the requirements of the law:

> The lessor must disclose the total amount paid or payable by the lessee during the lease term.... Lessors often only disclose the amount to be paid in taxes and fees at the lease's inception, during the lease's first year, or how much of each lease payment goes to

these fees. These disclosures are not adequate; the total of all fees to be paid during the lease term must be disclosed, even if this amount is only a reasonable estimate.

*Truth in Lending, Consumer Credit and Sales Legal Practices Services*, National Consumer Law Center, § 0.2.1.7, p. 112 (1988 Cum.Supp.). The defendants have offered no case law which supports their interpretation of the proper means of calculating the tax payable by the lessee, and a plain reading of the statutory language weighs against them. Absent any basis for reasonable interpretation in the defendants' favor, this Court must find that the plaintiffs have again shown the necessary elements of their case, and shown that the facts are not in dispute. The defendants have failed to adequately refute that showing. Summary judgment is therefore appropriate.

## PART III

 The plaintiffs' third basis for summary judgment is that the lease document fails to disclose the charge for early termination of the lease. Section 213.4(g)(12) of Regulation M states the following as a required disclosure:

> A statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term and the amount or method of determining the amount of any penalty or other charge for early termination.

The lease agreement is absolutely silent as to the charge or method for determining the charge and instead states: (NOTE: If lessee desires to terminate early, lessee should contact the lessor.) Simple declarations of this nature have been held to be statutory violations of the CLA by the Ninth Circuit in *Ljepava v. MLSC Properties, Inc.*, 511 F.2d 935 (9th Cir.1975). In *Ljepava* the Court held that the requirement under the TILA that the creditors disclosed the method of calculating late charges was violated by the disclosure "refer to note." The Court held that this statement violated the same single document disclosure rule as applies to the CLA

and, under the circumstances, was a confusing and inadequate statement of the late charge calculation. In this case, the defendants have left the method for determining the early termination charges absolutely open-ended and subject to future negotiations without any objective or ascertainable standard. The defendants' response that they never intended to charge any fee for early termination simply does not cure the defect in light of the statutory requirements. Thus, the defendants' first defense must fail.

The defendants' second argument in regard to their failure to disclose charges for early termination is based upon official commentary to Regulation M which states that disclosures "not relevant to a particular transaction may be eliminated entirely." They argue that since they never intended to charge penalties to the plaintiffs for early termination of the lease, any disclosure of such a statement would have been unnecessary to this particular document. This Court now holds that the total lack of disclosure of the method for calculating the charges for early termination is contrary to a federal policy to promote the informed use of credit through the meaningful disclosure of the terms of leases of personal property as that policy is found in 15 U.S.C. § 1601 and § 1667.

> ... the American consumer [should] be given the information he needs to compare the cost of credit and to make the best informed decision on the use of credit.

*Mourning v. Family Publications Services, Inc.*, 411 U.S. 356, 364, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973).

> As the Congressional hearings revealed, consumers remain remarkably ignorant of the nature of their credit obligations and of the costs of deferring payment. Because of the divergent, and at times fraudulent practices by which consumers were informed of the terms of the credit extended to them, many consumers were prevented from shopping for the best terms available and, at times, were prompted to assume liabilities they could not meet.

*Mourning*, 411 U.S. at 356, 93 S.Ct. at 1652.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that the plaintiffs' Motion for Partial Summary Judgment on the issue of violations of the Consumer Leasing Act be, and the same hereby is, *granted in its entirety*.