# ILLINOIS OFFICIAL REPORTS

## Appellate Court

**Robinson v. Point One Toyota, Evanston**, 2012 IL App (1st) 111889

| | |
|---|---|
| Appellate Court Caption | EMMA J. ROBINSON and LATANYA KEMP, Plaintiffs-Appellants and Cross-Appellees, v. POINT ONE TOYOTA, EVANSTON, Defendant (Toyota Motor Credit Corporation and River Oaks Toyota, Defendants-Appellees and Cross-Appellants). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-11-1889, 1-11-2482, 1-11-2522 cons. |
| Filed<br>Rehearing denied | December 28, 2012<br>January 31, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendants on plaintiffs' claims that defendants' automobile lease agreements violated the disclosure requirements of the Consumer Leasing Act and Regulation M because they were confusing, ambiguous, and not subject to being understood by inexperienced consumers, notwithstanding plaintiffs' contention that the uncontradicted affidavits of plaintiffs' experts made summary judgment erroneous, since the experts' conclusions that the agreements could not be understood did not require a finding that the disclosure requirements were violated. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 95-M3-3372; the Hon. Daniel T. Gillespie, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and vacated in part; cause remanded with directions. |

Counsel on Appeal

Joseph A. Longo, of Longo & Associates, of Mt. Prospect, for appellants.

Thomas M. Crisham, David J. Sullivan, and Clare J. Quish, all of Schuyler, Roche & Crisham, P.C., of Chicago, for appellees.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Reyes concurred in the judgment and opinion.

## OPINION

¶ 1    The plaintiffs, Emma J. Robinson and Latanya Kemp, appeal from an order of the circuit court of Cook County awarding partial summary judgment to the defendants, Toyota Motor Credit Corporation (TMCC) and River Oaks Toyota on the plaintiffs' joint claims under the federal Consumer Leasing Act of 1976 (15 U.S.C. §§ 1667a, 1667b (1994)) (the CLA). The defendants filed a cross-appeal and a separate appeal challenging the circuit court's jurisdiction.

¶ 2    On appeal, the plaintiffs raise the following issues: (1) the award of summary judgment to the defendants on the plaintiffs' joint default penalties claim was error; (2) the circuit court erred when it refused to award the plaintiffs statutory damages on each disclosure violation and failed to award them any statutory damages for nondisclosure violations; (3) the circuit court erred by allowing TMCC to raise a setoff claim for the first time at trial; (4) the circuit court erred when it denied the plaintiffs' request for actual damages; (5) the circuit court erred when it denied the plaintiffs' motion to compel the defendants to answer written discovery and appear for depositions; (6) the circuit court erred by failing to compel the defendants to resolve disagreements with the plaintiffs' attorney's time records and to compel the defendants to disclose their attorneys' time records; and (7) the circuit court erred when it failed to consider the uncontroverted affidavits of the plaintiffs' experts and the case law in determining the award of attorney fees. On cross-appeal, the defendants contend that the circuit court erred in granting partial summary judgment to the plaintiffs' joint lease termination and failure to itemize claims. In a separate appeal, the defendants contend that the circuit court lacked jurisdiction to award additional attorney fees and costs to the plaintiffs because the plaintiffs' motion for additional fees and costs was filed more than 30 days after the final order was entered in the case.

¶ 3                                  BACKGROUND
¶ 4                                  I. Prior History
¶ 5    The factual background of this case is detailed in the prior opinions of this court and our

supreme court. See *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (2002); *Robinson v. Toyota Motor Credit Corp.*, 315 Ill. App. 3d 1086 (2000). Therefore, we need only recite the facts pertinent to the issues raised in this case.

¶ 6    In 1993, each plaintiff entered into a vehicle leasing agreement with a Toyota dealership: Ms. Robinson with River Oaks and Ms. Kemp with Point One. The leasing agreements were assigned to TMCC. In 1995, the plaintiffs filed suit against the defendants, alleging violations of the CLA and the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)). The case was dismissed based on a pending class action suit against TMCC in California but was later reinstated in the circuit court.

¶ 7    The plaintiffs filed a second amended complaint alleging violations of the CLA, the Consumer Fraud Act, and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 1994)). Ms. Kemp's individual claim under the CLA for failure to disclose the actual amount of sales tax owed was also alleged as a breach of contract. The circuit court dismissed the CLA claims on *res judicata* grounds; the state claims and Ms. Kemp's breach of contract claim were dismissed for failure to state a cause of action.

¶ 8    On appeal from the circuit court's dismissal of the second amended complaint, this court ruled that *res judicata* barred the plaintiffs' joint CLA claims. We affirmed the circuit court's dismissal of the state claims but reversed the dismissal of the breach of contract claim. *Robinson*, 315 Ill. App. 3d 1086. On further review, the supreme court held that the joint CLA claims were not barred by *res judicata* but agreed that the plaintiffs failed to state a claim for violations of the Consumer Fraud Act. Accordingly, the supreme court reversed the judgment of this court and remanded the cause to the circuit court for further proceedings on the CLA counts. *Robinson*, 201 Ill. 2d at 423.[1]

¶ 9                    II. Circuit Court Proceedings on Remand

¶ 10   The circuit court granted in part TMCC's motion to dismiss the second amended complaint. The plaintiffs then filed a third amended complaint. Pertinent to this appeal, the plaintiffs alleged that the following provisions of the leasing agreement violated the CLA's disclosure requirements: default penalties, voluntary termination of the lease, and itemization of other charges to be paid by the plaintiffs.

¶ 11   Both parties moved for partial summary judgment. Initially, the circuit court denied both motions because of disputed factual issues. After the parties stipulated to all the material facts, on reconsideration, the court granted summary judgment to the plaintiffs on their lease termination and their itemization of other charges claim and Ms. Kemp's individual CLA claim. The defendants' motion for partial summary judgment on those claims was denied. The court then granted the defendants' partial summary judgment motion on the plaintiffs' default provisions claim and denied the plaintiffs' motion for partial summary judgment as

---

[1]The supreme court noted that the defendants did not challenge this court's ruling reversing the dismissal of the breach of contract claim. *Robinson*, 201 Ill. 2d at 406. The breach of contract count raised the same claim as Ms. Kemp's individual CLA claim.

to that claim.

¶ 12      Following an evidentiary hearing, the circuit court denied the plaintiffs' request for actual damages, except for the sales tax to be refunded to Ms. Kemp and awarded each plaintiff statutory damages in the amount of $1,000, based on the failure to disclose. 15 U.S.C. § 1640 (1994). On April 8, 2011, the court entered an order awarding Ms. Robinson $1,000 and Ms. Kemp $1,596, based on the setoff of the $500 settlement amount she received from Point One.

¶ 13      On June 10, 2011, the circuit court awarded the plaintiffs $113,280 in attorney fees and costs of $420. The plaintiffs filed their notice of appeal from the June 10, 2011, order on July 7, 2011. The defendants filed separate cross-appeals on July 15, 2011. On July 29, 2011, the circuit court entered an order correcting the amount of the award of attorney fees to $150,780 against the defendants and awarding attorney fees of $780 to the plaintiffs against River Oaks. The defendants filed notices of appeal from the July 29, 2011, order. On November 8, 2011, this court entered an order consolidating the appeals.

¶ 14                                                ANALYSIS

¶ 15      We first address the jurisdictional issue raised in the defendants' separate appeal.

¶ 16                                              I. Jurisdiction

¶ 17      The defendants contend that the circuit court lacked jurisdiction to award attorney fees and costs in its July 29, 2011, order because the plaintiffs' motion for fees and costs was filed on July 25, 2011, which was more than 30 days after the entry of the June 10, 2011, final judgment order. The plaintiffs respond that the circuit court had jurisdiction to correct a miscalculation it made in its determination of attorney fees and costs award.

¶ 18      Absent a timely filed posttrial motion, a trial court loses jurisdiction over a case pending before it 30 days after the entry of a final judgment terminating the litigation. *Holwell v. Zenith Electronics Corp.*, 334 Ill. App. 3d 917, 922 (2002). After the expiration of that 30-day period, the trial court lacks the necessary jurisdiction to amend, modify or vacate its judgment. *Holwell*, 334 Ill. App. 3d at 922. There are recognized exceptions to that jurisdictional rule; a court may at any time modify its judgment to correct a clerical error or matter of form so that the record conforms to the judgment actually rendered. *Holwell*, 334 Ill. App. 3d at 922. "This power may not, however, be employed to correct judicial errors or supply omitted judicial action." *Holwell*, 334 Ill. App. 3d at 922. A judicial error occurs when the judge commits an error in performing a judicial function. *In re Marriage of Takata*, 304 Ill. App. 3d 85, 92 (1999).

¶ 19      The July 29, 2011, order provided in pertinent part as follows:

          "1. The Court's June 10, 2011 order is corrected to change the amount of attorney's fees awarded in favor of Plaintiffs and against TMCC and River Oaks from $113,280 to $150,780 based upon the inadvertent omission of 125 hours at $300 per hour.

          2. The Court's June 10, 2011 order is further corrected to include an award of attorney's fees in favor of Plaintiffs and against River Oaks in the amount of $780.00

-4-

based upon the inadvertent omission of 2.6 hours at $300 per hour."

¶ 20    In *Takata*, the reviewing court found that the determination of a spouse's net income for the purpose of setting child support was a judicial function; "the judge employs a certain amount of discretion in determining an appropriate and reasonable amount." *Takata*, 304 Ill. App. 3d at 92. The court held that "a mathematical error in determining a spouse's income is not a clerical error; rather, as it is the product of the judicial function, it is a judicial error." *Takata*, 304 Ill. App. 3d at 93.

¶ 21    We find the calculation of the amount of the attorney fees award similar to the calculation of a spouse's net income for child support purposes and, therefore, a judicial function. Likewise, the circuit court's "inadvertent omission" of the number of hours in its calculation of the attorney fees was a judicial error. Therefore, the exceptions to the jurisdictional rule do not apply, and the circuit court lacked jurisdiction on July 29, 2011, to correct its June 10, 2011, order.

¶ 22    The plaintiffs' reliance on *General Motors Corp. v. Pappas*, 242 Ill. 2d 163 (2011), and *City of Chicago v. Scandia Books, Inc.*, 102 Ill. App. 3d 292 (1981), is misplaced as neither case involved the correction of a judicial error more than 30 days after the entry of a final judgment. In *General Motors Corp.*, the supreme court held that the trial court had authority to award judgment interest after the notice of appeal was filed because the award of interest was incidental to and not part of the judgment itself; it preserved the economic value of the judgment and did not affect or alter the issue on appeal. *General Motors Corp.*, 242 Ill. 2d at 175. In *Scandia Books, Inc.*, the reviewing court held that the trial court had jurisdiction to amend the judgment even though an appeal was pending because the amendment merely explained the order that was on appeal. *Scandia Books, Inc.*, 102 Ill. App. 3d at 298.

¶ 23    In the alternative, the plaintiffs argue the revestment rule applies. Under the revestment rule, after a trial court has lost jurisdiction due to the passage of time, the litigants may revest the court with jurisdiction by appearing before it and actively participating in proceedings which are inconsistent with the merits of a prior judgment. *Holwell*, 334 Ill. App. 3d at 923. "Conduct is deemed to be inconsistent with the merits of a prior judgment if it can reasonably be construed as an indication that the parties did not view the prior order as final and binding." *Holwell*, 334 Ill. App. 3d at 923.

¶ 24    The plaintiffs assert that the defendants' conduct established that they did not consider the June 10, 2011, order to be final and binding. The defendants did not raise a jurisdictional objection to their motion to correct the amount of the attorney fees award. The defendants actively participated in the proceedings by requesting that the judgment be stayed pending appeal and that the bond to be set in the amount of the corrected judgment, not in the amount of the original judgment. Finally, the July 29, 2011, order was drafted by TMCC's attorney.

¶ 25    Following the entry of the June 10, 2011, order, the plaintiffs filed their notice of appeal on July 7, 2011. On July 11, 2011, TMCC filed an emergency motion to stay enforcement of the judgment and to set the amount of security necessary for the stay of the judgment pending appeal. See Ill. S. Ct. R. 305(a) (eff. July 1, 2004). On July 15, 2011, both defendants filed their notices of cross-appeals. Such conduct indicates that both the plaintiffs and the defendants considered the June 10, 2011, order to be a final judgment.

¶ 26    The defendants' conduct cannot reasonably be construed as active participation in the proceedings inconsistent with the final judgment order of June 10, 2011. In its July 11, 2011, motion, TMCC requested that the bond to stay the judgment pending appeal be set in the amount of $174,444: 150 % of the total judgment entered on June 10, 2011. Both the motion to correct the June 10, 2011, order and the motion to set the bond were the subjects of the July 29, 2011, proceeding. In addition to correcting the June 10, 2011, order, the July 29, 2011, order provided that "[t]he amount of the security necessary to secure the judgment is set at $233,198.40 (150 % of the total judgment of $155,465.60)." The bond was based on the new judgment amount rather than the amount of the original judgment. The order further provided an extension of time to allow the defendants to file documents evidencing the security.

¶ 27    While the defendants did not raise a jurisdictional objection, they did not file any pleadings addressing the merits of the plaintiffs' motion. We do not attach any particular significance to the fact that TMCC's attorney rather than the plaintiffs' attorney drafted the July 29, 2011 order. The order addressed motions brought by both parties. As far as the record reflects, the defendants' "active participation" in the July 29, 2011, proceedings was limited to its own motion before the court. Therefore, the revestment rule does not apply in this case.

¶ 28    We conclude that the circuit court lacked jurisdiction to correct its judicial error as to the attorney fees and costs award in its June 10, 2011, order. Therefore, that portion of the July 29, 2011, order, awarding attorney fees and costs is void for lack of jurisdiction.


¶ 29                              II. Summary Judgment

¶ 30                              A. *Standard of Review*

¶ 31    We review the grant of summary judgment *de novo*. *Millennium Park Joint Venture, LCC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). "Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." *Illinois Farmers Insurance Co. v. Hall*, 363 Ill. App. 3d 989, 993 (2006). In reviewing the grant of summary judgment, the court "must determine whether the record reveals disputed issues of material fact or errors in entering judgment as a matter of law." *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993).


¶ 32                              B. *Discussion*

¶ 33    The CLA was enacted in 1976 as an amendment to the Truth in Lending Act (TILA) and like the TILA is a disclosure rather than a regulatory statute. *Kennedy v. BMW Financial Services, N.A.*, 363 F. Supp. 2d 110, 114 (D.C. Conn. 2005). The primary purpose of the CLA is to assure meaningful disclosure of the terms of a lease in order to allow the consumer to compare lease terms to credit terms. Therefore, the certain disclosures must be clear and conspicuous to the consumer when entering into the lease. *Kennedy*, 363 F. Supp. 2d at 114.

¶ 34    In enacting the CLA, Congress also delegated to the Federal Reserve Board the authority

to issue regulations updating and clarifying the requirements and definitions applicable to lease disclosures. *Kennedy*, 363 F. Supp. 2d at 114. These regulations are collectively referred to as Regulation M. *Kennedy*, 363 F. Supp. 2d at 114; see 12 C.F.R. § 213 (1995).

¶ 35                                    1. Plaintiffs' Appeal

¶ 36                                    a. *Default Provisions*

¶ 37    The plaintiffs contend that the circuit court erred in granting partial summary judgment to the defendants. They maintain that, as a matter of law, their lease agreements violated the disclosure requirements of the CLR and Regulation M in that default provisions contained in paragraph 21 of the lease agreements were confusing and ambiguous and unable to be understood by inexperienced consumers.

¶ 38    Paragraph 21 of the leasing agreements provides that in the event of a default by the lessee, the lessor has the right to retake the vehicle. Paragraph 21 continues in pertinent part as follows:

> "Even if we retake the Vehicle, you must still pay us the following amounts: (i) any monthly payments currently due and unpaid; (ii) any other charges arising from your failure to keep your promises under this Lease, except for excess wear and tear or excess mileage charges; (iii) any official fees and taxes imposed in connection with lease termination; and (iv) the excess, if any, of the sum of the Total Depreciation (Paragraph 5) and the Estimated Residual Value (Paragraph 10) over the sum of the Fair Market Value of the Vehicle (defined below) and all depreciation amounts in the Monthly Rental Charges (Paragraph 4(a)) that have become due. The depreciation amounts in the Monthly Rental Charges that have become due will be calculated pursuant to the procedure described in Paragraph 22. To the extent permitted by applicable law, you also agree to reimburse us for all expenses, including reasonable attorney's fees and costs of investigation, we pay to enforce our rights under this Lease, and any damages caused to us because of your default.

> Fair Market Value means (i) the price we receive if we, in our sole discretion, dispose of the Vehicle or (ii) the highest offer we receive for disposition of the Vehicle. As an alternative, if you disagree with our determination of the Fair Market Value of the Vehicle, you may obtain at your own expense a professional appraisal of the wholesale value of the vehicle. ***

> 22. **Depreciation Amounts:** Each Monthly Rental Charge (Paragraph 4(a)) is comprised of a lease charge and depreciation. The amount of the Monthly Rental Charge will not change each month; however, the lease charge and depreciation portions will vary. The lease charge for the entire lease term is earned by us on a constant yield basis. The lease charge portion of each Monthly Rental Charge is determined by multiplying the sum of (i) the remaining depreciation balance and (ii) the Estimated Residual Value (Paragraph 10) by the constant rate implicit in the Lease. The monthly lease charge calculation is based on the assumption that we will receive your Total Monthly Payment (Paragraph 4(e)) on the scheduled due date each month and that the Lease will go the full term.

The portion of each Monthly Rental Charge not allocated to the lease charge is credited to depreciation. The Total Depreciation (Paragraph 5) is amortized over the Lease term. At any given time, the remaining depreciation balance is the difference between the Total Depreciation and all depreciation amounts that have become due under the Lease. The depreciation amounts of the Monthly Rental Charges that have come due and been paid by you reduce your liability upon default."

¶ 39     The CLA provides in pertinent part as follows:

"Each lessor shall give a lessee prior to the consummation of the lease a dated written statement on which the lessor and lessee are identified setting out accurately and *in a clear and conspicuous manner* the following information with respect to that lease, as applicable:

* * *

(11) *** the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination." (Emphasis added.) 15 U.S.C. § 1667a(11) (1994).

¶ 40     The version of Regulation M in effect at the time the plaintiffs signed their leases required that a lessor's disclosures " 'be made clearly, conspicuously, in meaningful sequence, and in accordance with the further requirements of this section.' " *Applebaum v. Nissan Motor Acceptance Corp.*, 226 F.3d 214, 218 (3d Cir. 2000) (quoting 12 C.F.R. § 213.4(a)(1) (1995)). The official staff commentary for this provision explained that " 'clearly, conspicuously, and in meaningful sequence' required 'that disclosures be in a reasonably understandable form.' " *Applebaum*, 226 F.3d at 218 (quoting 12 C.F.R. § 213.4(a)(1)). The regulation did not require a particular mathematical progression or format, but " 'the disclosures must be represented in a way that does not obscure the relationship of the terms to each other.' " *Applebaum*, 226 F.3d at 218 (quoting 12 C.F.R. § 213.4(a)(1)).

¶ 41     The plaintiffs rely on *Lundquist v. Security Pacific Automotive Financial Services Corp.*, 993 F.2d 11 (2d Cir. 1993) (*per curiam*). Item 8 of the leasing agreement provided that " '[t]he lease charges will be earned by you on a constant yield basis in relation to the Adjusted Lease Balance as it declines during the lease term.' " *Lundquist*, 993 F.2d at 13. Item 16 of the leasing agreement provided that the lessee's early termination liability included " '(c) The amount, if any, by which the sum of the Adjusted Lease Balance as described in Item 8, plus one Base Payment, Item 3.A., exceeds the Realized Value, as determined in accordance with Item 15; plus ***." *Lundquist*, 993 F.2d at 13. The reviewing court found that the early termination provisions were " 'confusing, unduly complicated, and unnecessarily convoluted.' In particular, the termination formula in Item 16(c) of the lease is a Byzantine formula, beyond the understanding of the average consumer." *Lundquist*, 993 F.2d at 15. The court concluded that the lease disclosures were not reasonably understandable and violated the CLA. *Lundquist*, 993 F.2d at 15.

¶ 42     The analysis in *Lundquist* was addressed in *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir. 1996). In *Channell*, the lessee contended that the reference to the "sum of digits" method in an early termination clause was incomprehensible to the average

consumer and therefore violated the CLA's requirement that disclosures be clear and conspicuous. Noting that the method of determining the amount due was disclosed clearly and conspicuously, the court of appeals stated as follows:

"The district court held that only the method, and not the way the method works, needs to be disclosed. It is hard to read the statute and regulation any other way. 'Clear and conspicuous manner'-the language of § 667a-means *visible*, not *simple*. 'Manner' refers to the mode of presentation, not the degree of comprehension. The [CLA] and Regulation M do not define 'clear and conspicuous,' but the words are staples of commercial law. The Uniform Commercial Code defines 'conspicuous' as 'so written that a reasonable person against whom it is to operate ought to have noticed it.' [Citation.] A disclaimer of the warranty of merchantability is enforceable if conspicuous [citation], even if the average consumer hasn't the vaguest idea what a 'warranty of merchantability' entails." (Emphases in original.) *Channell*, 89 F.3d at 382.

See 12 C.F.R. § 213.4(a)(1) (1995).

¶ 43 Noting that the lease agreement in *Lundquist* contained a reference to the "constant yield basis," and the court's criticism of item 16(c), the court in *Channell* pointed out that the court in *Lundquist*

"neither points to 'constant yield basis' as problematic nor discusses the lease's shortcomings. The court does not explain why the operation of a formula must be simple-for the Act requires a clear presentation but does not limit the number of variables the lessor may consider. The quoted words 'confusing, unduly complicated, and unnecessarily convoluted' lack a source-they are not quoted *from* anything, ***. For current purposes, it is enough to say that *Lundquist* does not analyze or address the question whether the [CLA] and Regulation M permit a lessor to name a method without providing an elaboration of the method's operation. We hold that it does." *Channell*, 89 F.3d at 383.

¶ 44 *Channell* was followed in *Jordan v. Toyota Motor Credit Corp.*, 236 F.3d 866 (7th Cir. 2001). In *Jordan*, the lessee argued that while conspicuous, the vehicle lease's reference to the "constant-yield method" in calculating the early termination charge was too "abstruse" to be clear unless the average consumer could understand how the method worked. *Jordan*, 236 F.3d at 867. Based on *Channell*, the district court dismissed the claim.

¶ 45 On review, the court of appeals declined to overrule *Channell*. The court agreed that the term "clear" could mean " 'easily understood' or some variant." The court noted that the Federal Reserve has approved "disclosure by name, because it believes that nothing better is achievable at acceptable cost. That decision is entitled to judicial respect." *Jordan*, 236 F.3d at 867; see *Applebaum*, 226 F.3d at 220 ("[the CLA and Regulation M] do not necessarily demand disclosure in a form the average consumer can understand").

¶ 46 The court also rejected the lessee's argument that by providing an explanation how early-termination charges were calculated, the lessor violated the disclosure requirements. The lessee supported his argument with affidavits from two experts who were unable to compute the amount of the charges from the formula provided in the lease without having to rely on their own personal knowledge. The court concluded that "[b]ecause the written paragraphs

are no worse than the unelaborated name (they do not throw readers off the scent), and because both the name and the exposition will prove equally indigestible to most lessees, adding the explanation did not produce a violation of the [CLA]." *Jordan*, 236 F.3d at 868.

¶ 47　　　We find the analysis in *Channell*, as followed in *Jordan*, more persuasive than that of the court in *Lundquist*. Similar to the lease termination provisions in *Channell*, in the calculation of the amount the plaintiffs would owe if they defaulted on the vehicle leases, paragraph 22 referred to the "constant yield basis" method. Similar to the lease termination provision in *Jordan*, the defendants' attempt to provide an explanation of the default calculation method is just that, "an attempt." Still, under *Jordan*, the inclusion of such language does not fall afoul of the disclosure requirement of the CLA.

¶ 48　　　Based on the analysis in *Channell* and in *Jordan*, we find no merit to the plaintiffs' argument that the uncontradicted affidavits of their expert witnesses rendered summary judgment for the defendants erroneous. The conclusion by the plaintiffs' experts that the default calculation provisions could not be understood by the average consumer did not require a finding that the disclosure requirement was violated. See *Jordan*, 236 F.3d at 867-68.

¶ 49　　　The plaintiffs also argue that the cross-referencing in the lease agreement was confusing. However, the plaintiffs acknowledge cross-referencing is not prohibited, and based on our own review of the lease, the cross-referencing does not violate the "clear and conspicuous" requirement of the CLA.

¶ 50　　　　　　　　　　　　　b. *Plaintiffs' Other Arguments*

¶ 51　　　　　　　　　　　　　　i. Prior Rulings

¶ 52　　　The plaintiffs argue that summary judgment for the defendants was precluded by prior rulings in this case. The plaintiffs point out that in 1996, the circuit court determined that they stated a cause of action based on the unreasonableness of the default provisions of the lease agreement, and in 2004, the court determined that paragraph 21 contradicted paragraph 20 of the lease agreements. In response to the defendants' forfeiture argument, the plaintiffs argue that they raised the law of the case doctrine in the circuit court. However, their appellant's brief failed to provide any authority or pertinent argument in their contention that the prior holdings precluded the court from awarding summary judgment to the defendants. Therefore, the argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

¶ 53　　　　　　　　　　　ii. Denial of Motion to Compel Discovery

¶ 54　　　The plaintiffs argue that the circuit court's denial of their motions to compel the defendants to answer their discovery and deposition requests was an abuse of discretion and resulted in the circuit court's erroneous determination that the plaintiffs had not incurred any actual damages, other than Ms. Kemp's sales tax claim. While we agree that the abuse of discretion standard applies to the court's ruling, the plaintiffs failed to cite any authority addressing the merits of the court's ruling in their appellant's brief. Citations to authority that set forth only general propositions of law and do not address the issues presented do not

constitute relevant authority for purposes of Rule 341(h)(7). See *Roe v. Jewish Children's Bureau of Chicago*, 339 Ill. App. 3d 119, 127 (2003) (argument forfeited on appeal where party cited only general authority and provided no authority addressing specific issue raised).

¶ 55 We note that in their reply brief, the plaintiffs did cite case law in support of their argument that the circuit court's denial of their motion to compel denied them an opportunity to prove actual damages. See *Farmer v. Brennan*, 81 F.3d 1444 (7th Cir. 1996); *Resolution Trust Corp. v. North Bridge Associates, Inc.*, 22 F.3d 1198 (1st Cir. 1994). Both cases involve the entry of summary judgment while discovery requests were outstanding. In addition to being factually distinguishable, the court in *Farmer* did not agree with the proposition that every instance of incomplete discovery prevented summary judgment. *Farmer*, 81 F.3d at 1450. The plaintiffs' argument in their reply brief sheds no further light on why the denial of their motion to compel discovery resulted in their inability to prove actual damages. Therefore, the argument is forfeited.

¶ 56                iii. Compensatory and Punitive Damages to Ms. Kemp

¶ 57 The plaintiffs maintain that Ms. Kemp is entitled to actual damages on her CLA claim and punitive damages under the Consumer Fraud Act. Contrary to the plaintiffs' position, this court remanded Ms. Kemp's sales tax claim under the CLA and common law breach of contract claims, not under the Consumer Fraud Act. This court dismissed the plaintiffs' Consumer Fraud Act claims for failing to state a cause of action, and the supreme court upheld the dismissal. See *Robinson*, 201 Ill. 2d at 423-24.

¶ 58 The plaintiffs acknowledge that they failed to include a transcript of the evidentiary hearing on actual damages. As the appellants, they must provide a record sufficient for the review of the error they claim. *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001). "Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding." *Webster*, 195 Ill. 2d at 432.

¶ 59 We reject the plaintiffs' argument that their trial brief was sufficient to review the issue of actual damages. The circuit court's order of January 14, 2001, states that an evidentiary hearing on damages was conducted at which the court heard testimony. In the absence of the transcript from that hearing, we must presume that the circuit court's ruling had a sufficient factual basis and conformed to the law. *Webster*, 195 Ill. 2d at 432.

¶ 60 In support of their contention that Ms. Kemp is entitled to punitive damages on her individual CLA claim, the plaintiffs cite *Leyshon v. Diehl Controls North America, Inc.*, 407 Ill. App. 3d 1 (2010), but only for the proposition that punitive damages serve an important function. The plaintiffs' failure to cite more than general authority to support their contention results in forfeiture. *Roe*, 339 Ill. App. 3d at 127.

¶ 61                             iv. Setoff

¶ 62 Finally, the plaintiffs contend that the defendants were not entitled to a setoff of the settlement amount Ms. Kemp received from Point One because it was raised for the first time at trial. We disagree. In *Thornton v. Garcini*, 237 Ill. 2d 100 (2010), our supreme court

explained that a setoff, where a defendant requested a reduction in damages because a codefendant settled and compensated the plaintiff for the same injury, does not have to be raised in the pleadings but may be raised at any time. See *Thornton*, 237 Ill. 2d at 113-14.

¶ 63  We conclude that the default penalties provision of the vehicle lease agreements did not violate the disclosure requirements of the CLA and Regulation M. The other arguments raised by the plaintiffs did not preclude the grant of summary judgment to the defendants as they lack merit.

¶ 64  2. Defendants' Cross-Appeal

¶ 65  The defendants contend that the grant of partial summary judgment to the plaintiffs on their lease modification and failure to itemize other charges claims was error.

¶ 66  a. *Lease Termination*

¶ 67  Paragraph 20 of the vehicle lease agreement provided in pertinent part as follows:

> "**No Voluntary Early Termination:** You have no right to terminate this Lease prior to the scheduled end of its term. The only way this Lease can be changed is by a new written agreement signed by us and you. We have no obligation to enter into any new agreement and the decision to do so is in our sole discretion."

¶ 68  Under the CLA, the defendants were required to give the plaintiffs a written statement, setting out accurately and in a clear and conspicuous manner and "as applicable," "[a] statement of the conditions under which the lessee or the lessor may terminate the lease prior to the end of the term." 15 U.S.C. § 1667a(11) (1994). The lease agreement stated that the plaintiffs could not terminate the lease prior to the end of the leasing period. It would be difficult to write that provision in a way that would render it more accurate, more clear and more conspicuous. Any change in the lease agreement terms required a new written agreement between the parties and only if the lessor chose to enter into a new agreement. We find nothing inaccurate, unclear or inconspicious about the disclosure of that provision.

¶ 69  The plaintiffs' reliance on *Clement v. American Honda Finance Corp.*, 145 F. Supp. 2d 206 (D. Conn. 2001), is misplaced. In determining that an early termination provision in a vehicle lease agreement violated the CLA's disclosure requirements, the district court relied on *Lundquist*. The court acknowledged that "if this case were decided in the Seventh Circuit a different outcome would be required." *Clement*, 145 F. Supp. 2d at 213. The court rejected the defendant's suggestion that it adopt the Seventh Circuit precedent, *i.e.*, *Channell*, stating, "[t]his court, cannot, however, either overlook or overrule binding Second Circuit precedent [*Lundquist*]." *Clement*, 145 F. Supp. 2d at 213.

¶ 70  The plaintiffs' reliance on *Candelaria v. Nissan Motor Acceptance Corp.*, 740 F. Supp. 806 (D. N.M. 1990), is also misplaced as that case is distinguishable. In *Candelaria*, the vehicle lease provided that if the lessee wished to terminate the lease early, the lessee should contact the lessor but did not set forth the charge or method for determining the charge the lessee would incur in terminating the lease early. The district court held that the absence of a method for determining the charge for early termination left the charge subject to future

negotiations without an objective or ascertainable standard and was "contrary to a federal policy to promote the informed use of credit through the meaningful disclosure of the terms of leases of personal property." *Candelaria*, 740 F. Supp. at 810.

¶ 71 Unlike the lease in *Candelaria*, the lease agreements in the present case clearly denied the plaintiffs the right to terminate the lease. Therefore, there was no requirement to set forth the charge or method of determining the charge for early termination of the lease. The lease agreement further disclosed to the plaintiffs that the defendants had no obligation to agree to a change in the terms of the lease agreement. Possessed of the knowledge that they had no right to early termination of the lease, or to change the terms of the lease agreement in any respect, the plaintiffs were free to look elsewhere in the market place to lease a vehicle.

¶ 72 Neither the CLA nor Regulation M requires that a lease agreement provide the lessee the right or opportunity to terminate the lease. If the lease agreement does so provide, it must comply with the disclosure requirements of the CLA and Regulation M. The lease in this case accurately, clearly and conspicuously informed the plaintiffs that they could not terminate the lease voluntarily. Therefore, paragraph 20 of the lease agreement did not violate the disclosure requirements of the CLA and Regulation M.

¶ 73 b. *Itemization of Other Charges*

¶ 74 Section 1667a(4) of the CLA requires that the lessor provide the lessee with a written statement setting out "accurately and in a clear and conspicuous manner the following information, as applicable:

(4) The amount of other charges payable by the lessee not included in the periodic payments, a description of the charges and that the lessee shall be liable for the differential, if any, between the anticipated fair market value of the leased property and its appraised actual value at the termination of the lease, if the lessee has such liability[.]" 15 U.S.C. § 1667a(4) (1994).

¶ 75 At the time the plaintiffs entered into their vehicle leases, Regulation M provided as follows:

" 'In any lease subject to this section, the following items, as applicable, shall be disclosed:

(5) The total amount of all other charges, individually itemized, payable by the lessee to the lessor, which are not included in the periodic payments. This total includes the amount of any liabilities the lease imposes upon the lessee at the end of the term ***.' " *Abt v. Mazda American Credit*, 25 F. Supp. 2d 860, 864 (N.D. Ill. 1998) (quoting 12 C.F.R. § 4(g)(5) (1994)).[2]

¶ 76 The "other charges" disclosure was meant " '[t]o limit the amount of balloon payments in consumer lease transactions.' [Citations.]" *Turner v. General Motors Acceptance Corp.*, 180 F.3d 451, 456 (2d Cir. 1999) (quoting 12 C.F.R. § 213.1(b)(2) (1996)). " Other charges" does not include items which are not payable by the lessee and which are not a liability

---

[2]Now 12 C.F.R. § 4(d)(5), following the 1996 amendments.

imposed upon the lessee at the end of the lease term. *Turner*, 180 F.2d at 456.

¶ 77    The plaintiffs' lease agreements sets forth the amount of the monthly payment and then provide that, in addition to the monthly payments, the lessee "will pay directly to us all the amounts you must pay under this Lease which are not included in the Total Monthly Payment, or, if we pay any such amounts, you agree to reimburse us promptly." The lease agreements then set forth the amount of the estimated fees and taxes, the estimated residual value amount used in calculating the lessee's liability in the event of the lessee's default, that the lessor agrees not to exceed 15,000 miles a year or pay an excess mileage fee of 10 cents per mile, and that the lessor agrees not to expose the vehicle to excess wear and tear or be responsible for the cost of repairs in the event the lessee does not purchase the vehicle from the lessor.

¶ 78    In granting summary judgment to the plaintiffs on their failure to itemize other charges claim, the circuit court focused on the default provisions in paragraph 21 of the lease agreements providing that in the event the lessor retakes possession of the vehicle because the lessee has defaulted on the lease, the lessee must still pay "any other charges arising from your failure to keep your promises under this Lease, except for excess wear and tear or excess mileage charges." Noting the paucity of case law on this issue, the court relied on *Jordan v. Schaumburg Toyota*, No. 97 C 6697 (N.D. Ill. 1999), reasoning as follows:

> "The leases indicate that the various types of conduct that would amount to a breach under the leases, are specifically delineated paragraph by paragraph, and the itemization of the other charges for a specific breach is certainly possible. Based on the *Jordan* ruling and the language of Regulation M, TMCC must itemize those other charges. Because TMCC failed to expressly provide, by way of itemization, for the imposition of 'other charges' as a consequence of the breaches, Plaintiffs have met their burden of showing TMCC's violation of CLA and Regulation M."

See *Jordan v. Schaumburg Toyota*, No. 97 C 6697 (N.D. Ill. 1999) (court held that if a charge was included in the periodic payment, the lessor did not have to separately itemize and disclose the total amount of the other charges).

¶ 79    The lessee is still obligated to pay the amounts owed under the lease, even if the lessor has retaken possession of the vehicle. The lease agreements set out the charges incorporated into the monthly payment. The lease then sets forth the amounts of the charges not incorporated into the monthly payment, which the lessee would be responsible for at the end of the lease term. This is in keeping with the purpose of the disclosure requirements that a lessee not be required to pay amounts, unknown to him at the time the lease was entered into, at the end of the lease term. We believe that the itemization of other charges does not include those charges which a lessee would not incur under normal circumstances. Our belief is supported by the fact that charges for excess mileage and the excess wear and tear were specifically excluded from the "any other charges" referred to in paragraph 21, as only the circumstances at the end of the lease term would determine whether such charges were owed.

¶ 80    We conclude that the defendants' complied with the disclosure requirements of the CLA and Regulation M in that the lease agreements set forth all amounts the plaintiffs would be required to pay at the end of the lease term.

¶ 81                                             CONCLUSION

¶ 82       We conclude that, as a matter of law, the defendants did not violate the disclosure requirements of the CLA and Regulation M. Therefore, the defendants were entitled to summary judgment on all three of the plaintiffs' joint claims in their third amended complaint.

¶ 83       We further conclude that Ms. Kemp is entitled to a statutory award of $1,000 and an award of $596 in actual damages on her individual CLA claim. TMCC is entitled to a setoff of $500 against the award of damages to Ms. Kemp. Ms. Kemp is also entitled to an award of attorney fees and costs on her claim. The case will be remanded to the circuit court for a determination of the amount of attorney fees and costs to be awarded Ms. Kemp. Although the plaintiffs raised an issue as to the amount of attorney fees and costs awarded in this case, in view of the result here, we choose not to address the merits of that issue.

¶ 84       We affirm the award of partial summary judgment to the defendants and reverse the grant of partial summary judgment to the plaintiffs. We vacate the award of damages to Ms. Robinson and Ms. Kemp on their joint claims and affirm the statutory and actual damages awards to Ms. Kemp on her individual CLA claim. We vacate the attorney fees and costs awards to the plaintiffs and remand for a hearing on attorney fees and costs as to Ms. Kemp's individual CLA claim. Finally, we vacate the July 29, 2011, award of fees and costs for lack of jurisdiction.

¶ 85       The judgment of the circuit court is affirmed in part, reversed in part, vacated in part, and remanded for further proceedings.


¶ 86       Affirmed in part, reversed in part, and vacated in part; cause remanded with directions.